UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SIMONE MASON, | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | Civil No. 3:17-cv-1308 (MPS) |
| | : | |
| COMMISSIONER OF SOCIAL SECURITY | : | |
| | : | |
| *Defendant*. | : | |

**RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

In this appeal from the Social Security Commissioner's denial of benefits, Simone Mason, proceeding *pro se*, has filed a motion to reverse the decision of the Commissioner, and the Commissioner has filed a motion to affirm. Ms. Mason argues that the Administrative Law Judge ("ALJ") erred in twelve respects. ECF No. 23 ¶¶ 1-12. These arguments fall into three general categories of error: (1) failure to find a severe impairment at step two of the analysis, *id.* ¶¶ 1, 3-8, 11; (2) failure to properly evaluate the credibility of Ms. Mason's allegations regarding her symptoms, *id.* ¶¶ 3-7; and (3) failure to provide Ms. Mason with a clinical examination, *id.* ¶¶ 2. Ms. Mason also seeks to introduce additional documentation of her disability and work history. *Id.* ¶¶ 9-10, 12.[1]

---

[1] Ms. Mason states that she "will provide additional documentation of disability from doctors, therapist tha[n] was initially filed," ECF No. 23 ¶ 9, and "is willing to submit updated reports from doctors which will show that [she] continues to be disabled and unable to work," *id.* ¶ 10. "The Social Security Act provides that a court may order the Secretary to consider additional evidence, 'but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir 1988) (quoting 42 U.S.C. § 405(g)). The proffered evidence must meet a three-part test: the evidence must be (1) "new and not merely cumulative

1

For the following reasons, Ms. Mason's motion is DENIED, and the Commissioner's motion is GRANTED.

I.  **Procedural History, Facts, and Legal Standards**

I assume the parties' familiarity with the procedural history of the case, the ALJ's opinion, the record, and the five sequential steps used in the analysis of disability claims. I cite only those portions of the record and the legal standards necessary to explain this ruling.

Counsel for the Commissioner reports that she contacted Ms. Mason by letter to coordinate a joint statement of stipulated facts. ECF No. 24-1 at 2 n.2. Because Ms. Mason did not respond, the Commissioner set forth a narrative of the relevant facts "which is intended to be comprehensive and favorable to both parties." *Ibid*. I have reviewed this statement of facts as well as the underlying record in the case.

II. **Standard of Review**

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). As such, the Commissioner's decision "may be set aside only due to legal error or if it is not supported by substantial evidence." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 302–03 (D. Conn. 2010). The Second Circuit has defined substantial evidence as "such relevant evidence as a

---

of what is already in the record," (2) "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative," and there must be (3) "good cause for [the claimant's] failure to present the evidence earlier." *Tirado*, 842 F.2d at 597 (internal quotation marks and citations omitted). Because Ms. Mason has not actually provided any additional documentation, she has failed to satisfy this three-part test. Moreover, the Court notes that Ms. Mason would have difficulty meeting the good cause requirement in light of the ALJ's clear instructions to submit such documents during the hearing. *See* R. 31 (ALJ explaining that "[i]f you want to prove your case, we need updated treatment notes"); R. 33 (ALJ asking Ms. Mason "[h]ave you received any other treatment that's not in the record that you want us to look at?"). Indeed, the ALJ requested treatment records from Cornell Scott Hill Health Center on Ms. Mason's behalf, *see* R. 32-34, 60, and reviewed them.

reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

Furthermore, because Ms. Mason is proceeding *pro se*, the Court construes her claims of error liberally. *See Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed.").

## III. Discussion

### A. Severe Impairment

Ms. Mason argues that the "Commissioner did not carefully review the Plaintiff's record," ECF No. 23 ¶ 1, "Plaintiff has symptoms of depression, anxiety, panic attacks," *id.* ¶ 3, "Plaintiff has substantial trauma," *id.* ¶ 4, "Plaintiff has difficulty concentrating," *id.* ¶ 5, "Plaintiff has difficulty remember [sic] things for the past 8 years," *id.* ¶ 6, "Plaintiff's memory issue is due to her anxiety," *id.* ¶ 7, "Plaintiff's involvement in her church should not prejudice her ability to receive disability benefits," *id.* ¶ 8, and "Plaintiff has attempted to bring normalcy to her life however, plaintiff is still unable to work competitively," *id.* ¶ 11. Because Ms. Mason is *pro se*, and these arguments concern the impact of Ms. Mason's alleged impairments on her ability to function, the Court construes these arguments as challenging the ALJ's severity determination at step two of the analysis.

At step two, the ALJ "determines whether the claimant has a 'severe impairment' that limits her capacity to work." *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996). At this step, if the claimant has a mental impairment, the ALJ must follow the "special technique" set forth in 20 C.F.R. § 404.1520a.[2] Here, the ALJ found that Ms. Mason has major depressive disorder,

---

[2] The Court follows the special technique in effect on October 16, 2015, which is the date ALJ Harrington issued the decision. *See Barry v. Colvin*, 2014 WL 1219191, at *3 n.4 (W.D.N.Y.

3

psychosis, and polysubstance abuse in remission, thereby requiring application of the technique. R. 13. As such, the ALJ was required to discuss the limitation caused by the impairments in four broad areas: "(1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation." *Ornelas-Sanchez v. Colvin*, 632 F. App'x 48, 49 (2d Cir. 2016). This discussion "*must* include a specific finding as to the degree of limitation" in each area. *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (internal quotation marks and citations omitted). "If the ALJ finds the degree of limitation in each of the first three areas to be mild or better and identifies no episodes of decompensation, the ALJ will generally conclude that the plaintiff's impairment is not severe." *Habberfield v. Colvin*, 2016 WL 769774, at *14 (N.D.N.Y. Feb. 1, 2016), *report and recommendation adopted*, 2016 WL 796064 (N.D.N.Y. Feb. 24, 2016). "Where the plaintiff's mental impairment is severe, the ALJ must determine if it meets or is equivalent in severity to a listed mental disorder." *Id*. In this case, the ALJ found no limitation in the first functional area, a mild limitation in the second and third areas, and no episodes of decompensation. R. 17. As such, the ALJ concluded that Ms. Mason did not have a severe impairment. R. 17.

The ALJ's specific findings in each of the four functional areas were supported by substantial evidence. With regard to the first functional area, the ALJ found "no limitation" in activities of daily living and cited the claimant's testimony about doing projects at home, cooking, cleaning, attending conferences, and traveling. R. 17. In an earlier section of the decision, the ALJ provides further support for this finding. *See, e.g.*, R. 14 & 40-42 (relying on Ms. Mason's testimony to find that "[she] likes to do projects in her apartment, and decorate,"

---

Mar. 24, 2014) ("[T]his Court will apply the version of the regulation in effect when the ALJ adjudicated the claim."), *aff'd*, 606 Fed. Appx. 621 (2d Cir. 2015).

"likes to go to second hand stores," and "enjoys refinishing furniture, doing artwork, and sewing."); R. 15 & 327 (noting that Ms. Mason reported becoming a conservator for a man in her housing complex); R. 15 & 325 (noting that Ms. Mason "reported doing photography, community projects, and attending church"). In addition, the ALJ assigned great weight to the opinion of the consultative examiner, who noted that Ms. Mason's "[g]rooming and hygiene were meticulous" and she "appeared to be very well rested and very well nourished." R. 304. Thus, the ALJ's finding that Ms. Mason had "no limitation" in activities of daily living is supported by substantial evidence.

With regard to the second functional area, the ALJ found "mild limitation" in Ms. Mason's social functioning. To support this finding, the ALJ notes that Ms. Mason "is involved in many social organizations." R. 17. More specifically, she has reported "attending political conferences," R. 15 & 388, volunteering for political campaigns, R. 14 & 44-45, working as "a voluntary CEO for a non-profit," R. 15 & 415, serving "on the board" of a mental health organization, R. 14 & 43, "spending time with families in need of support," R. 15 & 346, and "getting involved with her housing complex's member government," R. 15 & 346. While Ms. Mason's treatment notes reflect that she prefers isolation at times, the notes also explain that she "displays insight into how isolation can increase her depressive" symptoms. R. 388. Similarly, although Ms. Mason reports anxiety that increases before leaving the house, she also reports that she can "work through her anxiety," R. 388, has an "ability to self-manage," R. 388, and "expresses having good stress management," R. 391. The ALJ also notes that Ms. Mason's Global Assessment of Functioning (GAF) scores have ranged from 60 to 70. R. 16. Scores between 61 and 70 indicate only "mild symptoms in psychological, occupational and social functioning," while a score of 60 is the "highest end of moderate," meaning Ms. Mason's

symptoms have generally been mild according to examining sources. R. 16. Her social functioning is further improved when she is on medication for her symptoms. *See* R. 322 (treatment notes explaining that she experiences "decreased racing thoughts since beginning prescribed medications."). The ALJ's determination that she has "mild limitation" in social functioning is therefore supported by substantial evidence.

The ALJ found "mild limitation" in the third functional area concerning "concentration, persistence or pace." R. 17. During the hearing before the ALJ, Ms. Mason testified that although she pursues employment, she doesn't follow through because "[i]t gives [her] anxiety to [pursue work]." R. 36. This suggests that she does have some limitation in "persistence." Nevertheless, at the time of the hearing, she also reported taking public health classes online with the University of Albany Public Health School, R. 53 & 435, and reported attending other trainings and classes in the prior two years, R. 340, 354, 355. Further, the consultative examiner, Dr. Lago, stated that she "demonstrate[d] sustained concentration and persistence throughout the interview," "[h]er cognition was excellent," and "[s]he was insightful, attentive, and very well focused." R. 306-07. The ALJ gave "great weight" to that opinion, noting that it was consistent with the treatment notes in the record. R. 16. Moreover, as discussed above, Ms. Mason's activities and involvement in various organizations also support the finding that she does not have significant limitation in this area. R. 15 & 17. Thus, there is substantial evidence to support the ALJ's finding that any limitation in this functional area is mild.

Finally, the ALJ found that Ms. Mason "has experienced no episodes of decompensation which have been of extended duration." R. 17.[3] Episodes of decompensation are:

---

[3] "[U]nder the 'special technique' for assessing the severity of mental impairments, the ALJ is not asked to identify episodes of decompensation 'which have been of extended duration.'" *Piazza v. Colvin*, 2014 WL 4954598, at *9 (E.D.N.Y. Sept. 30, 2014). At this stage, the ALJ is

6

> [E]xacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

20 C.F.R. § Pt. 404, Subpt. P, App. 1.[4] Although Ms. Mason may have experienced temporary increases in symptoms, the record does not show an accompanying loss in adaptive functioning—as is required for an episode of decompensation under the regulation. For instance, in October 2014, Dr. Neha Jain conducted a psychiatric evaluation in which she diagnosed Ms. Mason with several disorders; stated that Ms. Mason "presents as grandiose, with frequent persecutory ideas"; and noted that Ms. Mason was "moderately ill." R. 319-320.[5] In the same

---

asked only to identify whether there are episodes of decompensation at all. An inquiry into whether such episodes are of "extended duration" may then take place at the listings stage of the five sequential steps. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listings 12.01-12.10; *see, e.g.*, *Gonzalez v. Commr. of Soc. Sec.*, 2017 WL 7310391, at *6-7 (S.D.N.Y. Dec. 21, 2017), *report and recommendation adopted*, 2018 WL 671261 (S.D.N.Y. Jan. 31, 2018) (noting that various listings at step three require inquiry into whether episodes of decompensation were of "extended duration"). Nevertheless, the ALJ's determination that Ms. Mason "experienced no episodes of decompensation which have been of extended duration" does not require remand because substantial evidence supports the finding that there were no episodes of decompensation and remand is unnecessary "where application of the correct legal principles to the record could lead only to the same conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (internal quotation marks, citations, and alterations omitted).
[4] This definition of "episodes of decompensation" is found in the regulation effective on April 23, 2013, which is the date Ms. Mason filed her claim.
[5] The ALJ briefly discusses Dr. Jain's evaluation to note that Ms. Mason has a history of psychosis and presented as grandiose with persecutory ideas. R. 14-15. However, the ALJ does not discuss Dr. Jain's evaluation in the section discussing medical opinions and the amount of weight granted to each one. R. 16-17. Furthermore, the ALJ states that Ms. Mason "repeatedly declined psychiatric evaluations" without noting that she was evaluated by Dr. Jain. R. 15. However, any error that may have arisen from failing to consider Dr. Jain's evaluation in the medical opinion section is harmless. Remand is unnecessary "where application of the correct

7

report, however, Dr. Jain noted that Ms. Mason had "[n]o impairment" in perception, was "[f]ully oriented," had "[i]ntact" abstraction, and "[i]ntact" judgment. R. 319. She further noted that Ms. Mason's psychosis "appears to be her baseline" and there was no acute suicidal ideation, homicidal ideation, auditory verbal hallucinations, or delusions. R. 320.

Ms. Mason's treatment notes similarly show little to no loss in adaptive functioning even when symptoms related to her delusional disorder momentarily increased. *See* R. 324 (noting that Ms. Mason "continues to focus on belief that she is being targeted by political figures stemming from white collar crime she reports was committed against her," but also noting that she had "no impairment" in perception and "minimal impairment" in judgment and insight); R. 334 (noting "delusions" and "moderate impairment" in insight, but also noting that Ms. Mason was "fully oriented," had "minimal impairment" in judgment, and "no impairment" in perception). R. 325 (noting that Ms. Mason "continues to report not sleeping in her bedroom due to an inability to see both entrance and exit ways from where her bed must be placed," but also

---

legal principles to the record could lead only to the same conclusion." *Zabala*, 595 F.3d at 409 (internal quotation marks, citations, and alterations omitted). In this case, Dr. Jain's report does not differ in a meaningful way from the remaining treatment notes. Both Dr. Jain's report and the other treatment notes show evidence of delusions, *compare* R. 334 (treatment notes stating delusions) *with* R. 319 (Dr. Jain listing a rule out diagnosis of delusional disorder); both recommend that Ms. Mason take medication and note that she declined to do so, *compare* R. 340 (treatment notes stating "[c]lient declining medications at this time") *with* R. 319 (Dr. Jain noting that Ms. Mason "does not want to take medications" and that she "[w]ould consider low dose antipsychotic should patient agree"); both find good perception and judgment in some areas, *compare* R. 325 (treatment notes finding "intact" thought process, "no impairment" in perception, and "minimal impairment" in judgment and insight) *with* R. 319 (Dr. Jain noting "intact" abstraction, "intact" judgment, and "no impairment" in perception); and both find moderate impairment on a few occasions, *compare* R. 332 (treatment notes finding "moderate impairment" in insight) *with* R. 319 (Dr. Jain finding Ms. Mason to be "moderately ill"). Requiring the ALJ to evaluate and consider Dr. Jain's report in the section discussing medical opinions would lead to the same outcome and therefore does not require remand. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Of course, where application of the correct legal principles to the record could lead to only one conclusion, there is no need to require agency reconsideration.")

noting "no impairment" in perception and "minimal impairment" in judgment and insight). As the ALJ noted, "the claimant's mental status examinations have generally been normal during sessions," and despite her diagnoses, she has an ability to function in daily life. R. 15; *see* R. 75 & 391 (treatment note stating that "[c]lient continues to demonstrate ability to function in her daily life").

Furthermore, the Commissioner correctly notes that "there was no evidence in the record of any psychiatric hospitalizations, complete incapacitation, or need for a supportive living environment." ECF No. 24-1 at 29-30. Indeed, Dr. Jain expressly noted that Ms. Mason is "not committable," R. 320, and none of the treatment notes suggest that such steps would have been appropriate for Ms. Mason. Thus, the ALJ's finding that Ms. Mason experienced no episodes of decompensation is supported by substantial evidence.

In sum, the ALJ's findings at each step of the special technique, and the ALJ's ultimate determination that Ms. Mason does not have a severe impairment, are supported by substantial evidence.

### B. The Adverse Credibility Assessment

Ms. Mason argues that she "has symptoms of depression, anxiety, panic attacks," ECF No. 23 ¶ 3, "has substantial trauma," *id.* ¶ 4, "has difficulty concentrating," *id.* ¶ 5, "has difficulty remember[ing] things for the past 8 years," *id.* ¶ 6, and that her "memory issue is due to her anxiety," *id.* ¶ 7. Because Ms. Mason is *pro se*, and these arguments concern Ms. Mason's allegations of disabling symptoms and limitations, the Court construes these arguments as challenging the ALJ's adverse credibility assessment.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely

9

credible for the reasons explained in this decision." R. 14. The ALJ went on to explain that the "credibility of the claimant's allegations of disabling symptoms and limitations is diminished because those allegations are greater than expected in light of the objective clinical evidence and treatment notes." R. 14.

An ALJ has "discretion to evaluate a claimant's subjective testimony." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 220 (N.D.N.Y. 2009). "If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms." *Ibid*. Here, the ALJ considered such factors, noting that Ms. Mason "cooked, cleaned, made pastoral visits, and did counseling," "is involved in her local housing government, attend[ed] conferences, and [engaged in] frequent domestic and international travel," is in "active pursuit of employment opportunities," "functions at a higher level psychologically and cognitively[] than has been alleged," has decreased symptoms when taking prescribed medications, has a mixed record of attendance at therapy sessions, and prefers to "keep active, volunteer, and use diet and other natural methods to treat her conditions." R. 15-17. A court has "no reason to second-guess the credibility finding in [a] case where the ALJ identified specific record-based reasons for his ruling." *Stanton v. Astrue*, 370 Fed. Appx. 231, 234 (2d Cir. 2010). That is the case here. The ALJ provided ample support from the record to support the findings discussed above and the resulting credibility determination.

**C. Clinical Exam**

10

Ms. Mason argues that the "Commissioner failed to provide Plaintiff with [a] Clinical Examination." ECF No. 23 ¶ 2. An ALJ "has discretion to order a consultative examination to further develop the evidentiary record." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 269 (N.D.N.Y. 2012); *see also* 20 C.F.R. § 404.1517. In this case, a consultative examination from Dr. Jesus Lago was ordered, R. 304-307, and the ALJ considered his opinion in making a disability determination. Dr. Lago's opinion was that Ms. Mason "demonstrate[d] sustained concentration and persistence throughout the interview," "[h]er social interactions with supervisors and coworkers in the past have been excellent," "she is capable of adapting to work setting," and "[work] would be very therapeutic." R. 306-07. As such, Ms. Mason's argument that the Commissioner failed to provide her with a clinical examination is without merit.

## IV. Conclusion

For the reasons set forth above, Ms. Mason's motion, ECF No. 23, is DENIED and the Commissioner's motion, ECF No. 24, is GRANTED.

IT IS SO ORDERED.

 /s/ MICHAEL P. SHEA
Michael P. Shea, U.S.D.J.

Dated:    Hartford, Connecticut
          December 19, 2018